

McCARTER & ENGLISH
ATTORNEYS AT LAW

August 15, 2007

VIA E-FILE AND HAND DELIVERY

The Honorable Mary Pat Thynge
United States District Court for the District of Delaware
844 N. King Street
4th Floor, Room 4209
Wilmington, DE  19801

Christopher A. Selzer
Associate
Business Litigation Group
cselzer@mccarter.com

Re: **Daniel Miller v. ARAMARK Healthcare Support Services Inc., et al.**
**C.A. No. 06-534 (MPT)**

Dear Judge Thynge:

We write to provide Your Honor with information regarding the discovery dispute that is the subject of the Court's scheduled conference on Thursday, August 16, 2007. Plaintiff requests leave to conduct a *second* deposition of Jonathan Hill, an ARAMARK management witness, regarding the documents ARAMARK produced pursuant to the Court's June 26, 2007 Order. These documents were responsive to Plaintiff's Fourth Set of Requests for the Production of Documents and Third Set of Interrogatories. Plaintiffs did not serve these requests on ARAMARK until the last possible day to serve written discovery requests before the close of the discovery period.

The Interrogatories and Requests required ARAMARK to produce an extensive amount of medical equipment work orders for Plaintiff and preventative maintenance forms for Mr. John Ritterhoff, an alleged comparator. Defendants resisted production, in part, because it was onerous and irrelevant, because the requested documents, in and of themselves, would not prove anything. We expressly noted to the Court that even if the documents were produced, they would require further testimony from an individual with knowledge regarding the work order or preventative maintenance order to deduce any useful information from the documents. Plaintiff's counsel represented to the Court that they were able to review Mr. Ritterhoff's preventative maintenance documents with their client and gather the information that they needed from those documents. See Transcript of June 26, 2007 Teleconference, at 9:11-10:22, 12:18-13:6, 14:6-16, 15:23-16:9, 17:3-12, 17:15-18, cited pages attached hereto as Exhibit A. Indeed, prior to the Court's ruling, Plaintiff's counsel specifically represented to the Court that they would not need *any* additional discovery, even if the documents produced did show something:

> THE COURT: All right. Because my understanding is this is the last bit of discovery that is out there. My understanding is even if these documents do show

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

BALTIMORE

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

ME1 6648153v.1

The Honorable Mary Pat Thynge
August 15, 2007
Page 2

> something, there is not going to be any further discovery taken. Is that correct?
>
> MR. DELANY: That's correct, Your Honor.
>
> MR. PRIMOS: Yes, Your Honor.
>
> THE COURT: I'm asking plaintiff because that is what I thought was represented the last time.
>
> MR. PRIMOS: Yes, Your Honor.

See Transcript of June 13, 2007 Teleconference, at 9:22-10:6, cited pages attached hereto as Exhibit B. Incredibly, Plaintiff now contends that he must depose Mr. Hill *again* on the very issues that he represented to the Court (prior to its ruling) would not require additional discovery.

The letter from Plaintiff's counsel to the Court, dated August 8, 2007, also explains that the parties have had difficulty scheduling Plaintiff's deposition. The only difficulty has been Plaintiff. Defendants' counsel originally noticed Plaintiff's deposition for August 17, 2007 because Plaintiff was failing to provide available dates. Plaintiff's counsel said they were unavailable. When Defendants' counsel attempted to reschedule for August 24, 2007, Plaintiff's counsel stated that Plaintiff was unavailable until September 4, 2007. Given the current trial start date of December 17, 2007, and the delay occasioned by Plaintiff's belated written discovery requests, we are concerned that Defendants will not have ample opportunity to submit their summary judgment brief, which would necessarily include information gathered during Plaintiff's subsequent deposition, with sufficient time for the Court's consideration before the start of trial. Defendants therefore respectfully request that the Court modify the Scheduling Order to accommodate the additional time needed to conduct Plaintiff's deposition.

Thank you for your consideration and attention to this matter. We look forward to talking with Your Honor on August 16, 2007 to discuss these issues.

Respectfully,

/s/ Christopher A. Selzer

Christopher A. Selzer
DE Bar ID #4305

CAS:jr

Enclosures

ME1 6648153v.1

The Honorable Mary Pat Thynge
August 15, 2007
Page 3

cc: William D. Fletcher, Jr., Esq. (via e-file)
    Noel E. Primos, Esq. (via e-file)
    Michael P. Kelly, Esq.
    William J. Delany, Esq.
    Anne E. Martinez, Esq.

ME1 6648153v.1

# Exhibit A

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                             - - -

   DANIEL MILLER,
 4                                      :    CIVIL ACTION
                 Plaintiff,             :
 5                                      :
                 v.                     :
 6                                      :
   ARAMARK HEALTHCARE SUPPORT           :
 7 SERVICES INC., a domestic            :
   Corporation; ARAMARK CLINICAL        :
 8 TECHNOLOGY SERVICES INC., a          :
   domestic corporation; and            :
 9 ARAMARK MANAGEMENT SERVICES          :
   LIMITED PARTNERSHIP,                 :
10                                      :    NO. 06-534 (MPT)
                 Defendants.
11                             - - -

12                     Wilmington, Delaware
                 Tuesday, June 26, 2007 at 8:33 a.m.
13                     TELEPHONE CONFERENCE

14                             - - -

15 BEFORE:    HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE

16                             - - -

   APPEARANCES:
17
            SCHMITTINGER & RODRIGUEZ, P.A.
18          BY:  NOEL E. PRIMOS, ESQ.
                 (Dover, Delaware)
19
                      Counsel for Plaintiff
20
            MORGAN, LEWIS & BOCKIUS, LLP
21          BY:  WILLIAM J. DELANY, ESQ., and
                 ANNE E. MARTINEZ, ESQ.
22               (Philadelphia, Pennsylvania)

23                    Counsel for Defendants

24
                                     Brian P. Gaffigan
25                                   Registered Merit Reporter
```

```
 1              THE COURT:  Well, I don't think you are going to
 2   fax them over to me and use my fax machine for those 200
 3   pages.
 4              MR. PRIMOS:  I think they were able to e-mail
 5   them to you.  Maybe that is not practical.
 6              THE COURT:  Well, not right now it isn't.
 7              MR. PRIMOS:  Okay.
 8              THE COURT:  Why don't you address what
 9   information is actually found on those documents that are
10   relevant to the issues or defenses in this case.
11              MR. PRIMOS:  Yes, Your Honor.  One of the
12   reasons that we were requesting the information from
13   Mr. Ritterhoff is because he is a comparator.  I spent a
14   significant amount of time yesterday with my client going
15   through these documents and as we went through the records
16   of the preventive maintenances performed by Mr. Ritterhoff
17   for that period -- and, by the way, Mr. Ritterhoff and
18   Mr. Miller were the two employees who were assigned to do
19   preventive maintenance inspections at the Kent campus for
20   March of '05.  As we went through all those documents,
21   Mr. Miller was able to verify that for a large majority
22   of these, Mr. Ritterhoff was fudging his time.  Mr. Miller
23   was able to specifically state how, for each of these
24   procedures, there was a significantly greater amount of
25   time recorded for those procedures than would have been
```

1    necessary to perform those procedures.
2              THE COURT:  In his opinion.
3              MR. PRIMOS:  In his opinion.  But I do think
4    from having worked in the field for 20 years or so, he does
5    have knowledge that he is speaking from.  Of course, the
6    defendants would be able to present testimony to refute that
7    but that Mr. Miller was able to go through and not simply
8    say -- we spent a significant amount of time doing this.
9    Mr. Miller wasn't just saying, oh, that is too much time.
10   That is too much time.  He specifically would go through
11   each procedure and say this should have taken 10 minutes,
12   this should have taken 15 minutes and add those up and we
13   were consistently coming up with, in many cases, half the
14   time that Mr. Ritterhoff put down.
15             Similarly, we went through all of the records
16   for Mr. Miller and I made him go through those and verify
17   that he was putting down the correct amount of time.  And
18   for just about every one, he was able to verify that.  He
19   was very honest about it.  For one or two, he said I put a
20   little bit more time here than really I should have.  For
21   one or two, he said I shorted myself for the time that I
22   should have.
23             Now, one of the things we noticed going through
24   the records for Mr. Miller is that it appeared that not all
25   of the records were there and we don't know what the

1   explanation is for that. For example, and I know Your Honor
2   doesn't have a document, but the very last page of the
3   produced -- I'm sorry -- the very last page of the documents
4   that were produced for Mr. Miller, which is Bates stamped
5   A001055, talks about a preventive maintenance procedure done
6   on a transmitter and that is the only document that we saw
7   in all the documents produced for Mr. Miller that had to do
8   with any work performed on a transmitter. Mr. Miller,
9   however, recalls that during the month of March, he did
10  approximately 20 transmitters. So it doesn't make sense
11  that only one transmitter would show up for the first two
12  weeks of March and we don't know what the explanation is
13  for that?
14          MR. DELANY: I can give you the explanation.
15  It's an extremely difficult process to find these things.
16  That has been our point all along.
17          MR. PRIMOS: So are you saying, Will, that you
18  don't believe you found all of the documents that we were
19  requesting?
20          MR. DELANY: No, what I'm saying is my guy
21  searched for eight hours and was able to find this level of
22  documentation. Eight hours is a reasonable search for a
23  two-week period. I think that is pretty reasonable.
24          THE COURT: Because they can't just plug in a
25  name in a computer system to spit out who does what because

```
 1   of the way the documents are completed.  That's what I
 2   understand.
 3              MR. DELANY:  Correct.
 4              THE COURT:  I guess they could -- I don't know.
 5   I don't know if you can and plug in for -- in other words,
 6   you have to go through each document, every document related
 7   to every piece of equipment; is that what you are saying?
 8              MR. DELANY:  Correct, Your Honor.  There is also
 9   the problem if the plaintiff didn't fill out the paperwork
10   correctly, it makes it more difficult to find.  I suspect
11   that is the case given the plaintiff's propensity not to
12   fill out the paperwork correctly, which is part of the
13   reason we're here.
14              MR. PRIMOS:  Your Honor, that is what we
15   determined in looking through the documents.
16              THE COURT:  And then how is it relevant, Noel,
17   to the issue, to your claim?
18              MR. PRIMOS:  Well, with respect to
19   Mr. Ritterhoff, one of the claims we've been making in this
20   case that is Mr. Ritterhoff was treated preferentially.  He
21   was not performing the work that he should have been
22   performing.  And one of the things that these documents
23   indicate is that he was recording a lot of time for these
24   procedures that he shouldn't have been spending on these
25   procedures.  So either he was going a lot more slowly than
```

1  he should have been or he was putting down time that he
2  did not spend. And that was Mr. Miller's experience and
3  other witnesses that we will call, their experience with
4  Mr. Ritterhoff, that he was not performing the work that he
5  should have been performing. And so at least with respect
6  to Mr. Ritterhoff's records, that would support that.
7         With respect to the other records, one of the
8  things we were hoping to show with Mr. Miller's records
9  was the volume of work that he was expected to perform.
10 However, it appears from what Aramark's counsel is saying
11 that that can't be reliably shown because they can't find
12 all of the documents to show the work Mr. Miller was
13 performing.
14         THE COURT: That's assuming your client's memory
15 is accurate, too, about all the work that he thinks he was
16 doing in a specific period of time. And he may have been
17 doing it. But the problem is there is no easy means to
18 plug in an employee's name and have the employee's name
19 then associated with each piece of equipment that he may
20 have worked on or had contact with during that time period.
21 It's done by each piece of equipment, which I have a feeling
22 probably outnumbers the employees by about 10 to 1.
23         MR. PRIMOS: Right.
24         MR. DELANY: Your Honor, this is Will Delany. I
25 have two issues.

```
 1              THE COURT:  Well, Will, let Noel complete his
 2   thought.
 3              MS. DAVIS:  I'm sorry, I didn't hear it.  I
 4   didn't mean to cut anybody off.  I'm sorry.
 5              THE COURT:  Okay.
 6              MR. PRIMOS:  One other thing I would say, Your
 7   Honor.  We did have a chance to spend or I had a chance to
 8   spend -- of course, Bill has been in trial -- about one hour
 9   with Mr. Miller yesterday and then he spent an additional
10   couple of hours going through the documents.
11              It might be that if we had more opportunities to
12   sit down with Mr. Miller and with my co-counsel, you know,
13   there would be other things in these documents that we would
14   find that would be significant but those are the things that
15   jumped out at us just with the limited amount of time that
16   we had to spend on it.
17              THE COURT:  Okay.
18              MR. DELANY:  Your Honor, two issues.  One, I'm
19   hearing two articulations for why we should continue this
20   very exhaustive and time consuming process.  One is that
21   they want to see how much time was logged during this time
22   period and, two, they believe that plaintiff's objective
23   view of somebody else's work is relevant.  So let me take
24   both of those issues.
25              On the time issue, I just learned from Mr. Hill
```

1   today, our client, that he has a summary for the two-month
2   period of everyone's entered time.  So I think that
3   short-circuits that issue.  And I'm willing to produce that,
4   Your Honor.  I haven't seen it yet but I will work with him
5   and we'll get it produced so I think that takes this off the
6   table.
7           THE COURT:  And what is the source of that
8   information?
9           MR. DELANY:  Apparently, he compiles it at the
10  end of each week for his recordkeeping purposes.  So it's a
11  part of his normal process.  And it was not requested, Your
12  Honor, but we're willing to make it available if it will
13  short-circuit this issue.
14          On the second issue, I don't think plaintiff's
15  objective view of how long it took someone else to perform a
16  job based solely on the recording that job is relevant.  You
17  need that person's testimony as to what it was that job was
18  all about and why it took the time it took.
19          THE COURT:  Well, wouldn't the documents
20  indicate what the job entailed?
21          MR. DELANY:  Only in a summary fashion, Your
22  Honor.
23          MR. PRIMOS:  Your Honor, I beg to differ.  I was
24  looking at it.  And though it is a fairly short explanation
25  there, it is detailed.  It tells exactly what procedures

1  were performed on a unit, whether it was replacing a
2  battery, whether it was testing an alarm. And these are
3  standard procedures that are performed. And, for example,
4  my client, because of his experience in the field, knows how
5  long it takes to replace a battery on this particular type
6  of equipment or machine, how long it takes to do these other
7  procedures. So I think while there is not a lot of words
8  there, they are specific in their description of what work
9  was performed.
10              MR. DELANY: Your Honor, this is Will Delany.
11  And I think I was kind of cut off there. Let me read one to
12  you and let me finish out my thought on this issue. I'll
13  read one.
14              This was one done by John Ritterhoff, and it
15  took an hour and 15 minutes.
16              Verified operation, function and alarms. Unit
17  battery not holding a charge. Replace battery and charge
18  unit. Output set, 400 milliliter HR, actual 404 MLHR.
19  Occlusion pressure set. Six psi. Actual, six psi. Chassis
20  leakage. Current 10.2 micro amps. Ground resistance .01
21  ohms.
22              That is the first document for Mr. Ritterhoff.
23  That took an hour and 15 minutes. Maybe Mr. Primos can
24  decide, can explain to me how he can extrapolate from this
25  that that is not an appropriate period of time to deal with

```
 1    the troubleshooting of this machine and addressing the
 2    chassis leakage.
 3            MR. PRIMOS:  Your Honor, Mr. Miller again has
 4    experience in this field and there is a standard procedure
 5    for each of these functions and he was able to explain this
 6    function should take this amount of time, this function
 7    should take that amount of time.  It's not a type of
 8    profession, for example, when an attorney says he wrote a
 9    brief, well, there could be all kinds of things going do
10    that.  That is different from saying replace the battery and
11    there should be a standard amount of time that it should
12    take to perform that function.
13            MR. DELANY:  What is the standard amount of time
14    to address a chassis leakage?
15            MR. PRIMOS:  There should be a standard amount
16    of time and Mr. Miller was able to give an explanation.
17    Now, Your Honor, again, the defendants would be able to
18    refute that with testimony.
19            MS. DAVIS:  And when you take your BMW or your
20    Cadillac or your Chevy in and you have a transmission
21    problem, are you telling me that your mechanic is able to
22    fix that transmission in 15 minutes every time or does it
23    vary?
24            MR. PRIMOS:  Your Honor, I think what this is
25    illustrating is that is evidence that should be in front of
```

Exhibit B

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                IN AND FOR THE DISTRICT OF DELAWARE
 2
                              - - -
 3   DANIEL MILLER,
                                     :    CIVIL ACTION
 4              Plaintiff,           :
                                     :
 5         v.                        :
                                     :
 6   ARAMARK HEALTHCARE SUPPORT      :
     SERVICES INC., a domestic       :
 7   Corporation; ARAMARK CLINICAL   :
     TECHNOLOGY SERVICES INC., a     :
 8   domestic corporation; and       :
     ARAMARK MANAGEMENT SERVICES     :
 9   LIMITED PARTNERSHIP,            :
                                     :    NO. 06-534 (MPT)
10              Defendants.
                              - - -
11
                       Wilmington, Delaware
12              Wednesday, June 13, 2007 at 11:45 a.m.
                       TELEPHONE CONFERENCE
13
                              - - -
14
     BEFORE:    HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE
15
                              - - -
16   APPEARANCES:

17           SCHMITTINGER & RODRIGUEZ, P.A.
             BY:  NOEL E. PRIMOS, ESQ., and
18                WILLIAM D. FLETCHER, JR., ESQ.
                  (Dover, Delaware)
19
                        Counsel for Plaintiff
20
             MORGAN, LEWIS & BOCKIUS, LLP
21           BY:  WILLIAM J. DELANY, ESQ., and
                  ANNE E. MARTINEZ, ESQ.
22                (Philadelphia, Pennsylvania)

23                      Counsel for Defendants

24
                                     Brian P. Gaffigan
25                                   Registered Merit Reporter
```

1  production.  Find out if the hospital is willing to let you
2  do that.  And if we have any problems or there is concerns
3  about it, then we will be talking about this some time
4  during the week of June 25th.
5              And get the hospital attorney, tell him that he
6  has to be participating in this as well.  I'll accept an
7  oral motion or even a letter beforehand.  I want to get this
8  done and resolved.  And now that there is a new factor in
9  this, I want that new factor to be updated and involved.
10             MR. DELANY:  Your Honor, I hate to push on this.
11 Is it possible to do a day other than the 25th?
12             THE COURT:  I said some time during the week of
13 June 25th.
14             MR. DELANY:  Okay.
15             THE COURT:  I'm looking at possibly June 26th
16 either at 8:30 or 9:00 o'clock in the morning.  I don't know
17 how that works on everybody's schedule.
18             MR. DELANY:  For defendants, Your Honor, that
19 works fine.
20             MR. PRIMOS:  That works for plaintiff, Your
21 Honor.
22             THE COURT:  All right.  Because my understanding
23 is this is the last bit of discovery that is out there.  My
24 understanding is even if these documents do show something,
25 there is not going to be any further discovery taken.  Is

1   that correct?

2           MR. DELANY:  That's correct, Your Honor.

3           MR. PRIMOS:  Yes, Your Honor.

4           THE COURT:  I'm asking plaintiff because that is
5   what I thought was represented the last time.

6           MR. PRIMOS:  Yes, Your Honor.

7           THE COURT:  All right.  Will, you need to get in
8   contact with the hospital attorney, inform him or her that
9   we're going to be doing this at 8:30 in the morning on June
10  26th.  I need to know by no later than Thursday of this week
11  whether that date and time is doable.  And if it's not
12  doable, find out what other date and time on June 26th or
13  June 28th that he or she would be available.

14          MR. DELANY:  I will, Your Honor.

15          THE COURT:  So counsel understand if we have to
16  change it from the 26th, it will be changed to the 28th.
17  That will require you also, Will, to communicate with
18  plaintiff's counsel.  I believe those days are fairly open
19  for me so I can probably fill it in.  So if it meets all of
20  counsel's needs, it will probably be okay with me as well if
21  we need to change it.

22          MR. PRIMOS:  Your Honor, just for scheduling,
23  both Mr. Fletcher and I would have a problem with Thursday
24  morning.

25          THE COURT:  Okay.