**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DANIEL MILLER,

        Plaintiff,

    v.

ARAMARK HEALTHCARE SUPPORT
SERVICES, INC., ARAMARK CLINICAL
TECHNOLOGY SERVICES, INC., AND
ARAMARK MANAGEMENT SERVICES
LIMITED PARTNERSHIP,

        Defendants.

Civil Action No.  06-534-MPT

---

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

MCCARTER & ENGLISH, LLP
Michael P. Kelly (D.E. Bar I.D. 2295)
Christopher A. Selzer (D.E. Bar I.D. 4305)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Tel. 302.984.6300
Fax. 302.984.6399
mkelly@mccarter.com
cselzer@mccarter.com

MORGAN, LEWIS & BOCKIUS LLP
William J. Delany (admitted *pro hac vice*)
Anne E. Martinez (admitted *pro hac vice* )
1701 Market Street
Philadelphia, PA 19103-2921
Tel. 215.963.5066/5718
Fax. 215.963.5001
wdelany@morganlewis.com
aemartinez@morganlewis.com

Attorneys for Defendants

## TABLE OF CONTENTS

                                                                    **Page**

I.   INTRODUCTION ................................................................1

II.  ARGUMENT....................................................................2

     **A.**   Defendants Are Entitled To Summary Judgment On Plaintiff's
              Discrimination and Retaliation Claims Because Plaintiff Has
              Adduced No Evidence of Pretext.................................................2

     **B.**   Defendants Are Entitled To Summary Judgment With Respect To
              Plaintiff's Hostile Work Environment Claims...............................10

     **C.**   Defendants Are Entitled To Summary Judgment With Respect To
              Plaintiff's Claim For Breach Of Good Faith And Fair Dealing............11

     **D.**   Defendants Are Entitled To Summary Judgment With Respect To
              Plaintiff's Slander Per Se Claim................................................12

III  CONCLUSION ................................................................14

i

# TABLE OF AUTHORITIES

Billet v. CIGNA Corp.,
    940 F.2d 812 (3d Cir. 1991) .......................................................................6

Bullock v. Children's Hosp. of Phila.,
    71 F. Supp. 2d 482 (E.D. Pa. 1999)............................................................6

Ezold v. Wolf, Block, Schorr and Solis-Cohen,
    983 F.2d 509 (3d Cir. 1992).........................................................................3

Fuentes v. Perskie,
    32 F.3d 759 (3d Cir. 1994) ..........................................................................2

Messina v. E.I. Du Pont de Nemours & Co.,
    308 F. Supp. 2d 491 (D. Del. 2004) .......................................................4, 5

ii

## I.  **INTRODUCTION**

Defendants ARAMARK Healthcare Support Services, Inc., ARAMARK Clinical Technology Services, Inc. and ARAMARK Management Services Limited Partnership (collectively "Defendants") hereby submit this Reply Brief in further support of their Motion for Summary Judgment.[1] As Defendants demonstrated in their opening Memorandum of Law ("opening Memorandum" or "Mem."), there is insufficient evidence under Rule 56 standards to create a triable issue of material fact as to any of Plaintiff Daniel Miller's ("Plaintiff") claims.  Rule 56 requires Plaintiff to come forward with admissible record evidence that is capable of sustaining his claims at trial. However, in a classic attempt to obscure the facts to avoid summary judgment, Plaintiff's Answering Brief In Opposition To Defendants' Motion for Summary Judgment ("Opposition" or "Opp. Mem.") is riddled with non-material, extraneous factual allegations, subjective interpretations, and other red herrings.  Regardless of his efforts to create a dispute of fact, Plaintiff has not offered any evidence sufficient to defeat Defendants' Motion for Summary Judgment. Accordingly, Defendants respectfully request that this Court grant their summary judgment as to all of Plaintiff's claims.

---

[1]   Plaintiff was employed by ARAMARK Management Services, L.P.  As such, this is the proper corporate defendant.  ARAMARK Healthcare Support Services, LLC (formerly ARAMARK Healthcare Support Services, Inc.) and ARAMARK Clinical Technology Services, LLC (formerly ARAMARK Clinical Technology Services, Inc.) are affiliates of ARAMARK Management Services but did not employ Plaintiff.  As a result, these two latter entities are improperly named as corporate defendants and should be dismissed from the case.  However, in an abundance of caution, this Reply Memorandum of Law is submitted on behalf of all three corporate Defendants.

1

## II.    ARGUMENT

### A.    Defendants Are Entitled To Summary Judgment On Plaintiff's Discrimination and Retaliation Claims Because Plaintiff Has Adduced No Evidence of Pretext.

In their opening Memorandum, Defendants offered legitimate, non-discriminatory, non-retaliatory reasons for Plaintiff's incidents of discipline and the termination of Plaintiff's employment.  Plaintiff attempts to rebut those reasons by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  However, despite his best efforts, Plaintiff has not offered any admissible evidence that demonstrates that those reasons were a mere pretext for unlawful retaliation or discrimination as a matter of law.

### 1.    Comments Allegedly Made By Jonathan Hill Do Not Evidence Discriminatory or Retaliatory Animus.

In support of his pretext argument, Plaintiff's Opposition relies on comments allegedly made by Jonathan Hill as evidence of discriminatory or retaliatory animus. Specifically, Plaintiff alleges that Greg Wilson, one of Plaintiff's former co-workers, heard that Mr. Hill commented, "out with the weak, in with the strong" and "only the strong survive." Opp. Mem. at 31.  Plaintiff has not provided any context for these comments.  Noticeably absent from Mr. Wilson's affidavit and Plaintiff's Opposition is any reference to when Mr. Hill allegedly made these comments, to whom they were made and what they referenced.  These comments do not remotely support an inference that Mr. Hill was biased against Plaintiff because of his age, alleged disability or use of medical leave.  Nor do they cast any doubt on the credibility of Mr. Hill's stated reasons

2

for disciplining Plaintiff or for recommending the termination of Plaintiff's employment. Importantly, there is no evidence that Mr. Hill made these comments in reference to Plaintiff or in connection with the employment actions at issue. These alleged comments constitute nothing more than stray remarks, unrelated to the adverse employment actions at issue and, therefore, are not evidence of discrimination. See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

## 2.    Defendants Disciplined Plaintiff and Terminated Plaintiff's Employment Based On His Substantial Performance Deficiencies, Not Based On Minor Errors.

Plaintiff apparently believes that a fact finder could infer pretext based on the affidavit testimony of Mr. Wilson and Ted Lehmann, another one of Plaintiff's former co-workers, that "Plaintiff was disciplined for much more minor infractions" than Mr. Ritterhoff. Opp. Mem. at 23. This argument misses the mark entirely. Plaintiff was not disciplined or terminated from his employment because of isolated, minor problems. To the contrary, Mr. Hill disciplined Plaintiff for several serious performance problems, including problems with regard to documentation and two safety violations.[2] Mem. at 11-16. As explained in Defendants' opening Memorandum, CE Technicians must work carefully and maintain accurate records because their errors can result in injury and even

---

[2]    With regard to the defibrillator incident, Plaintiff admits that he did not make any effort to fix the defibrillator, remove it, lock it or tag it as defective. Opp. Mem. at 12. Therefore, it is undisputed that Plaintiff violated the "lock out, tag out" procedure. Mem. at 14-15. Plaintiff's discussion about the location of the gap in the device makes no sense and does not minimize the severity of Plaintiff's failure to tag the device, lock it, or remove it from the hospital floor. If any part of the equipment is exposed, then an electrical shock hazard is created regardless of whether the gap was in the top, bottom or back.

death, wasted funds, and can negatively impact the hospital's adherence to regulations and accreditation rules, and ultimately can jeopardize a portion of the hospital's funding source. Mem. at 3. Thus, although Plaintiff attempts to characterize Mr. Hill's criticisms of his performance as pretextual nitpicking, the record evidence refutes that characterization. Plaintiff's performance problems put both the patients' safety and the hospital's accreditation at risk, and ultimately, Defendants determined that Plaintiff did not perform his job safely enough and they terminated his employment. Mem. at 16.

> **3.    There Is No Evidence That Plaintiff Was Treated Differently Than Any Similarly Situated Younger Store Managers.**

In an attempt to demonstrate pretext, Plaintiff asserts that younger, non-disabled technicians (Bill McClement, Sterling Townsend and John Ritterhoff) also submitted incomplete or inaccurate documentation, but were not disciplined. Opp. Mem. at 9, 28. However, there is no admissible evidence to support that assertion. Plaintiff cannot show that he was treated less favorably than Messrs. McClement, Townsend and Ritterhoff with regards to his discipline and termination of employment.

In order to show pretext based on differential treatment of members outside of the protected class, Plaintiff must first establish that the alleged comparators were "similarly situated" with him. "To show that employees are similarly situated, the plaintiff has the burden to show that they were subject to the same standards and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Messina v. E.I. Du Pont de Nemours & Co., 308 F. Supp. 2d 491, 497 (D. Del. 2004) (internal quotation omitted). None of the other technicians are similarly situated to Plaintiff because there is no evidence that they engaged

in the same conduct as Plaintiff.[3] In particular, there is no evidence that the other

technicians like Plaintiff consistently submitted inaccurate or incomplete documentation.

There is also no evidence that any of them submitted incomplete work orders or inspection

forms <u>after</u> completing training and competency testing regarding proper documentation.

As Defendants established in their opening Memorandum, the areas that Plaintiff failed to

complete on his documentation (i.e., the installation date, the suggested tier level, the base

month and the recommended frequency) were the same categories of information that Mr.

Hill specifically addressed with Plaintiff during Plaintiff's competency testing.[4] Mem. at

10. Plaintiff has also offered no evidence that Messrs. McClement, Townsend and

Ritterhoff engaged in <u>several</u> safety violations. For these reasons, Plaintiff cannot establish

pretext because Plaintiff cannot establish that Messrs. McClement, Townsend and

Ritterhoff were "similarly situated" to him in all material respects. See <u>Messina</u>, 308 F.

Supp. 2d 491, 497 (D. Del. 2004) (comparator was not similarly situated where

comparator's alleged conduct occurred before safety rule was adopted while plaintiff's

conduct occurred after rule was adopted and training regarding the rule had occurred, and

where comparator, unlike plaintiff, did not expose himself or other employees to a

---

[3]      Plaintiff attempts to establish Mr. Townsend as a comparator based on Plaintiff's
allegations that Mr. Townsend submitted inaccurate and incomplete paperwork
and that Mr. Townsend also installed a stop-switch on the same location of
another stress machine/treadmill. Opp. Mem. at 9, 11, 28. However, Plaintiff has
not provided any evidence regarding the types of inaccuracies or omissions
allegedly made by Mr. Townsend on his documentation. Additionally, Plaintiff's
assertion that Mr. Townsend was given preferential treatment ignores the fact that
Plaintiff's employment termination was based on multiple safety violations.

[4]      Rather than accepting responsibility for his mistakes, Plaintiff blames his
performance deficiencies on his belief that he received insufficient training on the
ISIS Pro computer inventory system. Opp. Mem. at 10. However, it is undisputed
that Plaintiff never requested more training on the ISIS system and he never
indicated to anyone that he did not know how to use this system. Mem. at 12-13.

5

hazardous situation); <u>Bullock v. Children's Hosp. of Phila.</u>, 71 F. Supp. 2d 482, 489 (E.D.

Pa. 1999) (comparators were not similarly situated where no allegation they had same

performance deficiencies for which plaintiff was terminated).

4.    **The Personal Opinions Of Plaintiff And His Co-Workers About Mr. Hill's Decisions Cannot Establish Pretext.**

Throughout his Opposition, Plaintiff purports to show pretext by opining on the

"fairness" of Mr. Hill's decisions.  However, Plaintiff's personal belief and the opinions

offered by his two co-workers that Plaintiff performed as well or better than other

technicians is irrelevant to an inquiry into pretext.[5]  It is the decision makers' perceptions

that count, not the perceptions of Plaintiff or other employees.  <u>Billet v. CIGNA Corp.</u>,

940 F.2d 812, 825 (3d Cir. 1991) ("what matters is the perception of the

decisionmaker.").  Since Plaintiff, Mr. Lehmann and Mr. Wilson were not the decision

makers with respect to any of the employment decisions at issue, their personal opinions

are immaterial.

---

[5]     It should be noted that Plaintiff attempts to establish pretext by relying on affidavit testimony from Mr. Lehmann that Mr. Hill's "unfair treatment of Plaintiff increased markedly upon Plaintiff's return from medical leave." Opp. Mem. at 7.  Mr. Lehmann's opinion makes no sense.  It is undisputed that Mr. Hill supervised Plaintiff for only a total of three weeks prior to Plaintiff's medical leave. Mem. at 6.  Therefore, this is not a situation where an employee's manager had ample time to observe that employee's performance before his medical leave of absence and only started disciplining that employee for those previously observed problems when the employee returned from leave.

5.    **Plaintiff Makes Several Arguments That Are Wholly Unsupported By The Undisputed Evidence.**

a.    **Plaintiff incorrectly asserts that Milford Memorial Hospital had no problems.**

In an attempt to create the appearance of pretext, Plaintiff makes several arguments that lack any factual basis.  For example, apparently in support of his belief that Mr. Hill misjudged Plaintiff's performance, Plaintiff notes without any citation to record evidence that "there were no performance problems with Milford Memorial Hospital, where Plaintiff was based."  Opp. Mem. at 6.  The only evidence that Plaintiff offers in support of this point is his claim that the preventative maintenance ("PM") completion rate at Milford Memorial was higher than that at Kent General Hospital.  Opp. Mem. at 6.  Although Plaintiff correctly states that Milford Memorial's 87% completion rate was higher than Kent General's completion rate, this fact is immaterial because Milford Memorial should have had a completion rate of 90% and, therefore, it was also deficient in its PM completions.  Supplemental Affidavit of Jonathan Hill ("Supp. Hill Aff."), attached hereto as Exhibit A, at ¶4.  Additionally, Mr. Hill discovered that many of the "completed" PMs at Milford Memorial were deficient and had to be redone.  Supp. Hill Aff., ¶5.  Therefore, even though Milford Memorial may have had a higher PM completion rate, this fact does not establish that there was an absence of problems.

Furthermore, Plaintiff's Opposition loses sight of the fact that ARAMARK assigned Mr. Hill to the Bayhealth account because ARAMARK was in danger of losing its contract with the entire Bayhealth account.  Mem. at 5.  In order to improve the contract, ARAMARK and Mr. Hill had to focus on improving the PM completion rate as well as ensuring that properly completed work, timely repairs, timely inspections and

MEI 6885013v.1

accurate recordkeeping were done at both hospitals.  Supp. Hill Aff., ¶6.  Therefore,

Milford Memorial's PM completion rate does not fully reflect the hospital's performance.

>  **b.  Plaintiff incorrectly claims that Mr. Hill denied Plaintiff leave.**

Plaintiff incorrectly asserts that "Hill denie[d] Plaintiff requested leave."  Opp.

Mem. at 11.  It is undisputed that Plaintiff received the full 12 weeks of FMLA leave, and

six additional gratuitous weeks of leave.  Mem. at 35.  To the extent that Plaintiff relies on

the initial denial of time off to attend a doctor's appointment, his claim must fail because

Plaintiff concedes that he did not inform Mr. Hill that he needed time off for a medical

appointment, and when he finally did so, he was granted the requested time off.  Opp.

Mem. at 11; Mem. at 35, n.12.

>  **6.  Plaintiff's Placement On The Rotation Schedule Does Not Establish Pretext.**

Plaintiff claims that "there is a clear inference that those who were required to use

extended period of leave were punished" because they were placed at the end of the

rotation list.  Opp. Mem. at 22.  No such inference is created.  To the contrary, Mr. Hill

logically places anyone returning from a leave of absence at the bottom of the rotation list

because he believes that employees not on leave have an expectation that they will rotate

to a particular hospital at a particular time based the established rotation roster that is

already in effect.  Supp. Hill Aff., ¶7.  Furthermore, Plaintiff has not shown that this

practice evidences discrimination or retaliation since all employees returning from leaves

of absence (not just those returning from medical or disability leave) are placed at the end

of the list.  Mem. at 9.

7.    **The Fact That Mr. Hill Did Not Mention The Treadmill Or Defibrillator Incidents During Plaintiff's Employment Termination Discussion Does Not Establish Pretext.**

Plaintiff claims that the fact that Mr. Hill did not mention to Plaintiff that the treadmill and defibrillator incidents contributed to the decision to terminate Plaintiff's employment constitutes evidence of pretext. Opp. Mem. at 26, 30. It is undisputed that Plaintiff was told that his employment was being terminated for "unacceptable work." Opp. Mem. at 32; A-208-09. Nothing requires Defendants requires to review with Plaintiff the litany of factors upon which they based their conclusion that Plaintiff did not perform his work in an acceptable manner. Thus, there is nothing inconsistent or implausible about the fact that the two safety incidents led to the termination decision, particularly in light of the fact that Plaintiff's final documentation errors all involved defibrillators, the exact same type of safety-sensitive equipment at issue in the discipline Plaintiff received just ten days earlier.

In short, there is not a shred of evidence to support Plaintiff's speculation that Mr. Hill discriminated against him based on Plaintiff's age or alleged disability, or in retaliation for Plaintiff's use of medical leave. The undisputed record evidence shows that after Plaintiff returned to work in December, 2004, and after Mr. Hill had the opportunity to observe Plaintiff's work performance more fully, Mr. Hill quickly discovered Plaintiff's performance deficiencies and disciplined Plaintiff for several serious performance problems. Mem. at 11. The undisputed record evidence also shows that Mr. Hill expressed his concern that, based on Plaintiff's safety violations and documentation discrepancies, Plaintiff did not perform his job safely enough to work for ARAMARK any longer. Mem. at 16. Although Mr. Hill disciplined Plaintiff and recommended the termination decision, there is no evidence from which a fact finder could infer that the

9

decisions were motivated by retaliation or by age or disability discrimination.  Given that

Plaintiff has not offered any evidence that would allow a fact finder to reasonably infer that

Defendants' reasons for the employment actions at issue were either a post-hoc fabrication

or otherwise did not actually motivate the employment actions, Defendants are entitled to

summary judgment on Plaintiff's discrimination and retaliation claims.

**B.      Defendants Are Entitled To Summary Judgment With Respect To Plaintiff's Hostile Work Environment Claims.**

In their opening Memorandum, Defendants established that the facts Plaintiff

identified in his deposition in support of his hostile work environment claim failed to

establish such a claim as a matter of law.  Perhaps recognizing the weakness of his claim,

Plaintiff has attempted to bolster it with new assertions:  that Mr. Hill allegedly stated,

"out with the weak, in with the strong" and "only the strong survive,"[6] and that Plaintiff

believed he was "overburdened with work."[7]  Opp. Mem. at 33, 34.  Even if Plaintiff's

newly asserted allegations are considered, Plaintiff's allegations do not rise to the level of

a hostile work environment as a matter of law.  Plaintiff provides no case support for his

assertion that the conduct at issue was sufficiently severe or pervasive and fails to

distinguish any of the cases cited by Defendants in the opening Memorandum

demonstrating that it was not sufficiently severe or pervasive.  See Mem. at 32-33.  For

---

[6]     Importantly, there is no evidence that Plaintiff heard about these alleged remarks before Plaintiff's employment termination.

[7]     Although Plaintiff contends that he never received assistance even though he was allegedly overburdened with work, it is undisputed that Plaintiff never asked for help and he never complained about his physical work.  Mem. at 9.  Therefore, Plaintiff cannot possibly establish an inference of discrimination because there is no evidence that Mr. Hill knew that Plaintiff felt "overburdened" or that Plaintiff wanted assistance.

these reasons, Defendants are entitled to summary judgment on Plaintiff's hostile work

environment claim.

**C.    Defendants Are Entitled To Summary Judgment With Respect To Plaintiff's Claim For Breach Of Good Faith And Fair Dealing.**

Plaintiff now contends that alleged discrimination does not provide the basis for

Plaintiff's breach of good faith and fair dealing claim, but rather his claim is based on

Defendants' purported falsification of employment records to create fictitious grounds for

Plaintiff's termination.[8]  Opp. Mem. at 32.  However, Plaintiff has provided no evidence to

support his argument that Defendants falsified any employment records.

Plaintiff first attempts to create the appearance that Mr. Hill falsified records by

noting that Mr. Hill told Plaintiff that the manufacturer would not commit to a proper

location of the treadmill stop-switch and that Plaintiff's disciplinary document regarding

the treadmill installation stated that the device "has a safety feature not being installed

properly."  Opp. Mem. at 32.  Plaintiff has taken Mr. Hill's statement out of context.  When

Mr. Hill called the manufacturer, the manufacturer would not tell Mr. Hill where to place

the emergency stop-switch and told Mr. Hill to check the manual.  Supp. Hill Aff., ¶8.

Although the manufacturer may not have committed to a specific location for the stop-

switch over the phone, it is undisputed that the service manual specifically instructed that if

---

[8]    It was not apparent from Plaintiff's Complaint that Plaintiff's claim for breach of good faith and fair dealing was based on the purported falsification of employment records as opposed to the alleged discrimination.  Plaintiff's Complaint makes no mention of any such alleged falsification of records and clearly states, "[b]y their actions as described in this Complaint, including but not limited to, interfering with, restraining, and denying Plaintiff's exercise of and attempt to exercise his rights under the Family and Medical Leave Act, and Defendants' harassment of and discharge of Plaintiff, Defendants have breach the covenant of good faith and fair dealing implied under Delaware law."  Complaint, ¶37.

this optional second stop-switch was installed, that it should be mounted only on the front

of the machine. Mem. at 13. It is also undisputed that the stop-switch was installed on the

sidebar, which created an unsafe condition and the chance of a spill of nuclear material.

Mem. at 13. Thus, Plaintiff has offered no evidence that Mr. Hill provided false

information on the disciplinary memorandum by writing that the safety device was not

properly placed on the treadmill.

Plaintiff next attempts to demonstrate record falsification by arguing that the

termination memorandum indicates that Plaintiff's incomplete and inaccurate

documentation constitutes "unacceptable work" while Mr. Hill did not consider other

technician's incomplete documentation unacceptable. Opp. Mem. at 32. Contrary to

Plaintiff's allegations, this does not establish that Mr. Hill falsified any records. As

previously explained, Plaintiff has not shown that other employees consistently submitted

incomplete or inaccurate documentation _after_ completing training and competency testing

regarding proper documentation. Moreover, it is absurd to argue that improper

documentation by a CE Technician would not constitute "unacceptable work" given that

their failure to maintain accurate records can result in injury or death, can negatively impact

the hospital's adherence to regulations and accreditation rules, and can jeopardize a portion

of the hospital's funding source. Mem. at 3-4. For these reasons, Plaintiff has offered no

evidence to support his allegation that Mr. Hill falsified any employment records and

Plaintiff's breach of good faith and fair dealing claim must fail.

**D.     Defendants Are Entitled To Summary Judgment With Respect To
         Plaintiff's Slander Per Se Claim.**

Plaintiff has offered no evidence to establish his slander per se claim. As an initial

matter, Plaintiff's Opposition does not challenge Defendants' arguments that Mr. Hill's

ME1 6885013v.1

alleged statement about Plaintiff's abilities as a technician is not defamatory and lacked publication. See Mem. at 39. Therefore, Plaintiff's slander claim based on Mr. Hill's alleged statement must fail.

Additionally, as Defendants demonstrated in their opening Memorandum, Plaintiff's slander claim based on Sharon Money's alleged statements must fail because Plaintiff has no admissible evidence to support his claim. Plaintiff admits that he does not have first-hand knowledge of Ms. Money's statements. See Opp. Mem. at 35. Since Ms. Money's statements constitute inadmissible hearsay, they cannot be considered on a motion for summary judgment. See Mem. at 38-39. Thus, Plaintiff's slander claim fails as a matter of law and this Court should enter summary judgment in Defendants' favor on this claim.

ME1 6885013v.1

III.    **CONCLUSION**

For the reasons set forth above and those set forth in Defendants' opening

memorandum of law, there are no genuine disputes of material fact and the Court should

grant Defendants' motion for summary judgment as to all of Plaintiff's claims.

Respectfully submitted,


/s/Christopher A. Selzer
Michael P. Kelly (D.E. Bar I.D. 2295)
Christopher A. Selzer (D.E. Bar I.D. 4305)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Tel. 302.984.6300
Fax. 302.984.6399
mkelly@mccarter.com
cselzer@mccarter.com

William J. Delany (admitted *pro hac vice*)
Anne E. Martinez (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. 215.963.5066/5718
Fax. 215.963.5001
wdelany@morganlewis.com
aemartinez@morganlewis.com

Attorneys for Defendants

ME1 6885013v.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL MILLER,

Plaintiff,

v.

ARAMARK HEALTHCARE SUPPORT
SERVICES, INC., ARAMARK CLINICAL
TECHNOLOGY SERVICES, INC., AND
ARAMARK MANAGEMENT SERVICES
LIMITED PARTNERSHIP,

Defendants.

Civil Action No. 06-534-MPT

I, Jonathan Hill, depose and state as follows:

1.      I have been employed by ARAMARK Management Services, LP or a predecessor ("ARAMARK") since approximately 1995 and have worked for ARAMARK's Bayhealth Account since July 1, 2004. Since July 1, 2004, I have held the position of Front Line Manager.

2.      ARAMARK Clinical Technology Services, LLC (formerly ARAMARK Clinical Technology Services, Inc.) and ARAMARK Healthcare Support Services, LLC, (formerly ARAMARK Healthcare Support Services, Inc.) are affiliates of ARAMARK Management Services, LP.

3.      I submit this Supplemental Affidavit in support of Defendants' Motion for Summary Judgment and Defendants' Reply Brief in Further Support of Defendants' Motion for Summary Judgment in the above-captioned matter. This Affidavit supplements my sworn deposition testimony provided on February 14, 2007 and my affidavit provided on September 30, 2007.

4.    In approximately January, 2004, Milford Memorial Hospital had a preventative maintenance ("PM") completion rate of approximately 87%, but Milford Memorial Hospital should have had a PM completion rate of 90%. Accordingly, Milford Memorial Hospital was deficient in its PM completions.

5.    Additionally, I discovered that many of the "completed" PMs at Milford Memorial were deficient and had to be redone.

6.    In order to improve ARAMARK's contract with Bayhealth Medical Center, ARAMARK and I had to focus on improving the PM completion rate as well as ensuring that properly completed work, timely repairs, timely inspections and accurate recordkeeping were done at both Milford Memorial Hospital and Kent General Hospital.

7.    I place anyone returning from any type of leave of absence at the bottom of the rotation list because I believe that employees not on leave have an expectation that they will rotate to a particular hospital at a particular time based on the established rotation roster that is already in effect.

8.    In approximately March 2005, I called the manufacturer of the treadmill that Kent General Hospital uses to administer stress tests. During that call, the manufacturer would not tell me where to place the optional second stop-switch and, instead, told me to check the manual for the treadmill.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct, based upon my knowledge, information and belief.

DATED: November 1, 2007          JONATHAN HILL

2

CERTIFICATE OF SERVICE

I, Christopher A. Selzer, hereby certify that on November 1, 2007, I caused a copy of the

foregoing documents to be served upon counsel of record via the CM/ECF-file and Serve

system.

/s/ Christopher A. Selzer
Christopher A. Selzer (DE Bar ID #4305)