## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DANIEL MILLER,                          :
                                        :
            Plaintiff,                  :
                                        :
v.                                      :    Civil Action No. 06-534-MPT
                                        :
ARAMARK HEALTHCARE SUPPORT              :
SERVICES, ARAMARK CLINICAL TECH-        :
NOLOGY SERVICES, INC., AND              :
ARAMARK MANAGEMENT SERVICES             :
LIMITED PARTNERSHIP,                    :
                                        :
            Defendants.                 :

## MEMORANDUM ORDER

## INTRODUCTION

This is an employment discrimination case. Daniel Miller ("plaintiff") filed a

complaint against ARAMARK Healthcare Support Services, Inc., ARAMARK Clinical

Technology Services, Inc., and ARAMARK Management Services Limited Partnership

("defendants") claiming discrimination and retaliation in violation of the Family Medical

Leave Act, 29 U.S.C. § 2617(a)(1), age discrimination under 19 *Del. C.* § 710 *et seq.*

(2006), handicap discrimination under 19 *Del. C.* § 720 *et seq.* (2006), breach of the

covenant of good faith and fair dealing, and slander. Plaintiff claims that he was

wrongfully discharged by defendants on April 15, 2005. Defendants move for summary

judgment arguing that there are no genuine issues of material fact and they are entitled

to judgment as a matter of law.

## FACTUAL  BACKGROUND

Plaintiff is a former ARAMARK Clinical Engineering Technician ("CET") for
Milford Memorial Hospital and Kent General Hospital which are part of Bayhealth
Medical Center ("Bayhealth").  CETs are responsible or inspecting and repairing
hospital equipment.  CETs also have administrative responsibilities, including
maintaining work orders, equipment maintenance history records, preventive
maintenance requests and inventory records.  CETs must maintain accurate records
because errors may result in patient injury, can negatively impact the hospital's
adherence to regulations and accreditation rules and ultimately can jeopardize hospital
funding.

Plaintiff began working in the biomedical equipment field in the late 1970's.  In
the early 1990's, he was employed by Milford Memorial Hospital as a Senior Biomedical
Equipment Technician.  In 2002, the Clinical Engineering Services department for
Bayhealth was outsourced to ARAMARK and plaintiff remained assigned to Milford
Memorial Hospital as an employee of ARAMARK.  After the change in management,
plaintiff successfully completed in January 2004 the ARAMARK CET competency
testing and had one of the highest scores.  Plaintiff served as a CET for ARAMARK
until his discharge on April 15, 2005. During the time prior to his medical leave, plaintiff
consistently received favorable evaluations and had not received any disciplinary write-
ups from defendants.

In 2004, ARAMARK had difficulty meeting compliance standards with regard to
record keeping, preventative maintenance and repairs at the Bayhealth facilities.  In
order to maintain its service contract, ARAMARK assigned Jonathan Hill ("Hill") as a

2

front line manager to correct the problems. Several weeks after Hill's appointment, on August 6, 2004, plaintiff began medical leave for surgery resulting from stage-2 cancer of the mouth and jaw. Parts of plaintiff's mouth, tongue and jaw were removed. A portion of his jaw was replaced with bone from his leg. The donor site from his leg became infected and the additional complication required extended recovery time and work leave. While plaintiff was out on leave, he communicated with Hill, providing updates on his progress. During plaintiff's leave, pursuant to his mission to meet regulatory compliance, Hill installed new software for equipment tracking and personally trained the staff on its use.

Plaintiff returned to work on December 10, 2004, but had difficulty walking and communicating due to the pain in his leg and jaw. ARAMARK accommodated him by assigning plaintiff to bench repair tasks for one month. Thereafter, he was reassigned to full duty. Although plaintiff did not complain directly to Hill, he continued to experience leg and shoulder pain, along with the inability to clearly speak in a loud tone or to talk for long periods of time without salivating. Plaintiff claims that he was overburdened with work as a result of his full-time assignment and contends that he should have been provided some assistance during his "on-floor" repair calls. Plaintiff did not inform Hill of any work restrictions or limitations to work at his pre-surgical capacity.

In March 2005, plaintiff was disciplined for inaccurately recording equipment serial numbers and service intervals in the company's new software system. Plaintiff was disciplined twice in a two week period for such infractions. As a result of a third incident in March, plaintiff was counseled for failing to follow protocol regarding the

3

installation of a treadmill safety shut-off switch. Finally, in April 2005, plaintiff was disciplined for not tagging a defective defibrillator in the hospital's Intermediate Care Unit. Protocol required tagging the unit to assure that the equipment is not used until it was removed from service and repaired or replaced. Plaintiff tried to remove the defective unit, but was prevented from doing so by the supervising nurse because a replacement was required prior to removal. When he was unable to locate a replacement, plaintiff informed a co-worker and then left for a doctor's appointment. After becoming aware of the problem, Hill removed the unit from the floor, repaired and returned it.

As a result of the defibrillator incident and the prior documentation errors, Hill recommended to the Human Resources Director that plaintiff be terminated. A severance letter was presented to plaintiff on April 15, 2005.

In July 2005, plaintiff filed a discrimination claim on the basis of age and disability with the Delaware Department of Labor and the Equal Employment Opportunity Commission. He received a Notice of Right to Sue from those agencies and filed a wrongful termination complaint in the Superior Court of the State of Delaware in August 2006. Defendants removed the action to this court pursuant to 28 U.S.C. § 1446(b) on August 31, 2006.

## STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

4

judgment as a matter of law."[1]  The moving party bears the burden of proving that no genuine issue of material fact exists.[2]  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3]

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial."[4]  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."[5]  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.[6]  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.[7]

With respect to summary judgment in discrimination cases, the court's role is "to

---

[1] Fed. R. Civ. P. 56(c).

[2] See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).

[3] Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir.1995) (internal citations omitted).

[4] Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

[5] Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995).

[6] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[7] See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

5

determine whether, upon reviewing all the facts and inferences to be drawn therefrom in

the light most favorable to the plaintiff, there exists sufficient evidence to create a

genuine issue of material fact as to whether the employer intentionally discriminated

against the plaintiff."[8]  Argument supported by hearsay, not admissible at trial, cannot be

considered on a motion for summary judgment.[9]

## POSITION OF THE PARTIES

### Family Medical Leave Act ("FMLA") Claim

Defendants argue that there is no direct evidence of discrimination.  They suggest

that under the *McDonnell Douglas*[10] framework, even if plaintiff makes a *prima facie*

case of discrimination, all defendants need to show is a legitimate, non-discriminatory

business reason for their employment decision.  They argue that once the burden shifts

back to plaintiff, he is then required to prove discrimination by a preponderance of the

evidence.  Defendants suggest that plaintiff's evidence does not meet this burden.

Plaintiff argues that his absence under the FMLA led to discriminatory treatment

by his employer.  He suggests that soon after his return, he was assigned too much

work with no assistance.  He contends that despite his seniority, he was last on the list of

CETs that were rotated to Milford Memorial Hospital (a preferred rotation).  He proffers

that other younger CETs submitted inaccurate and incomplete information and were not

disciplined.  Plaintiff maintains that Hill provided comprehensive training on the new

---

[8] *Revis v. Slocomb Indus.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987)).

[9] *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 (3d Cir. 1996).

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6

system to the other CETs while he was on leave, but after his return, only gave plaintiff a fifteen minute overview of the new computer system. He contends that the limited training resulted in documentation errors which led to the disciplinary writeups and ultimately to his dismissal.

### Age Discrimination

Defendants argue that plaintiff does not establish a *prima facie* case of age discrimination because he failed to show that he was treated less favorably than a similarly situated younger individual. They contend that plaintiff must prove that age was a determinative factor in the adverse employment action. Defendants maintain that the departmental changes requiring the use of a new computer system, and the written job descriptions and responsibilities applied to all CETs; therefore, their conduct is not discriminatory. Defendants submit that there is no evidence that the other technicians were similarly situated or engaged in the same conduct of submitting incomplete paperwork or violating similar safety standards. Defendants aver that plaintiff cannot establish the fourth prong of his *prima facie* case of age discrimination without a valid comparator.

Plaintiff argues that a *prima facie* case of age discrimination is met by the following: at the time of his termination, plaintiff was 54 years old, the oldest member on the CET staff; he was qualified for the position, as proven by his outstanding service record and recent evaluations; he suffered an adverse employment action, as evidenced by the unjust termination; and, he was treated less favorably than other similarly situated employees who were not disciplined for inaccurate and incomplete paperwork,

7

and improper handling of instrument repairs. In addition, he was replaced by a younger and less experienced employee.

Plaintiff posits that he was targeted for discipline as a pretext for discrimination because documentation errors and service issues were widespread throughout the department. Specifically, affidavits from Gregory Wilson and Ted Lehmann[11] support that other CETs were sloppy, handed in late and incomplete reports, and were never officially disciplined. Plaintiff alleges that he was discriminated against because Hill felt threatened by the fact that plaintiff was almost 20 years older and more experienced than he was. Although plaintiff recognizes that age was not the sole reason for his termination, he argues that it was a determinative factor.

### Handicap Discrimination

Defendants claim that plaintiff is not handicapped as defined under the Delaware Handicapped Persons Employment Protections Act ("DHPEPA"). To qualify, they claim that he must show: "(a) . . . a physical or mental impairment which substantially limits one or more major life activities; (b) . . . a record of such and impairment; or (c) is regarded as having such an impairment."[12] Defendants argue that none of plaintiff's limitations are severe enough to qualify as a handicap because they do not limit plaintiff's major life activities. Although they acknowledge that plaintiff is limited in walking long distances, standing for extended periods of time and climbing stairs, they note that such limitations are not substantial. Defendants recognize that plaintiff has a

---

[11] ARAMARK employees working under Hill in the Biomedical Engineering department while plaintiff was employed.

[12] 19 *Del. C.* § 722.

8

speech impediment which affects his ability to pronounce certain words and speak loudly, but they point out that those difficulties do not restrict verbal communication and do not qualify as handicap under the DHPEPA.

Plaintiff asserts that he is disabled and that his condition significantly affected his ability to communicate and his mobility. He argues that the DHPEPA includes individuals who are "regarded as having such an impairment." Plaintiff contends that Hill treated him unfairly because he could not fully function immediately after his return from medical leave. Plaintiff opines that Hill regarded his inability to perform and his deformity as handicaps, which influenced his decision to terminate him. Plaintiff contends that Hill's intolerance of impaired workers is evidenced by his remarks, such as, "only the strong survive" and "out with the weak, in with the strong." Plaintiff suggests that to rebut a motion for summary judgment, he must either discredit the proffered reasons circumstantially or directly, or proffer evidence that it is more likely than not that discrimination was a "motivating or determinative cause for the adverse employment action."[13] Plaintiff contends that he has produced such evidence.

### Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that plaintiff's good faith and fair dealing claim fails as a matter of law. They assert that the Delaware Discrimination in Employment Act ("DDEA") precludes such a claim.[14] They contend that under similar circumstances, this court has

---

[13] *Fuentes v. Perskie*, 32 F.3d 759, 761 (3d Cir. 1994). Plaintiff maintains that he only needs either direct or circumstantial evidence, which allows a factfinder to reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id*. at 764.

[14] *Moon v. Delaware River & Bay Auth.*, 2006 WL 462551, *4 (D. Del. Feb. 24, 2006).

9

found that an employee cannot assert a claim for breach of covenant of good faith and fair dealing because "the Delaware state statute provides the exclusive remedy" for employment discrimination claims.[15]

Plaintiff agrees that the DDEA is the exclusive remedy in a discrimination case, but argues that the "good faith and fair dealing" claim applies because the defendants falsified or manipulated employee records to create fictitious grounds for termination. Plaintiff posits that Hill falsely recorded his alleged performance insufficiencies while younger employees were not similarly disciplined for making the same errors.

### Hostile Work Environment

Defendants argue that there is no support for the severe and persuasive harassment necessary for an actionable hostile work environment claim. They contend that it is not enough that plaintiff believed the work environment to be hostile, but he must show that a reasonable person would have found it so.[16] In addition, they suggest that the alleged hostility must be linked to the discrimination resulting from plaintiff's age or disability.[17] They assert that a hostile environment claim requires that discrimination be pervasive and regular and have detrimentally affected a reasonable person of the same protected class in his position.[18] Defendants argue that plaintiff is offering nothing more than his own subjective belief and conclusory statements to support his claim. Finally, they suggest that there is no evidence that Hill allegedly harassed plaintiff

---

[15] *Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006).

[16] *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).

[17] *See Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81 (1998).

[18] *See Aman v. Cort Furniture Rental Corp*., 85 F.3d 1074, 1081 (3d Cir.1996).

10

because of his age or status as a handicapped person, or that any harassment was severe or persuasive enough to meet the standard set forth in *Onacle*.[19]

Plaintiff argues that he suffered intentional discrimination because of his membership in a protected class. He contends he was treated unfairly upon returning from medical leave because he was overburdened with work. He suggests that Hill created a hostile environment by making comments like "out with the weak, in with the strong" and "only the strong survive." Plaintiff states that he felt isolated because others would stare at him and whisper, and he experienced headaches, stomach pain, and sleeplessness as a result of the stress of worrying what Hill might "do to him."

### Slander

Defendants argue that no evidence is proffered to establish the elements necessary to support a defamation claim. They contend that his slander claim is based on Sharon Money's ("Money") alleged comments[20] and that those comments constitute inadmissible hearsay. Hearsay comments, they maintain, may not be considered on a motion for summary judgment. In addition, they argue that Hill's remarks were an opinion of plaintiff's work performance and therefore, do not constitute defamation. Moreover, they note, that Hill's comments were made solely to plaintiff.

Plaintiff contends that Money and Hill maligned him regarding his trade and profession. He states that Money remarked to other employees that plaintiff acted like

---

[19] 523 U.S. at 78 (("When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

[20] Money is an administrative assistant in the Clinical Engineering Services department. She apparently made the comments to a co-worker which eventually were repeated to plaintiff.

11

he was drunk, was a pitiful technician, and should have stayed on long-term disability. In addition, plaintiff claims that during his exit interview, Hill commented that he performed like a technician with five years experience, rather than twenty-five years. Plaintiff suggests that Money and Hill's comments are slander.

## DISCUSSION

### FMLA Discrimination and Retaliation

Plaintiff claims that defendants fired him in retaliation for exercising his rights under the FMLA.  Retaliation claims under the FMLA are analyzed under the burden shifting framework of *McDonnell Douglas Corp. v. Green*.[21]  *McDonnell Douglas* sets forth a three-step analysis for retaliation claims.  First, plaintiff must establish a *prima facie* case of retaliation.  A *prima facie* case of retaliation under the FMLA is shown by the employee availing himself of a protected right under the FMLA and suffering an adverse employment action with evidence of a causal connection between the protected activity and the employer's adverse employment action.[22]  "After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action."[23]  "Finally, if a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to show that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action."[24]  In order to survive summary judgment, a plaintiff must "either (i) discredit the

---

[21] 411 U.S. 792 (1973).

[22] *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004).

[23] *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004).

[24] *Baltuskonis v. US Airways, Inc.*, 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999).

[defendant's] proffered reasons . . ., or (ii) adduce evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[25]

Defendants purport that plaintiff's evidence does not establish a *prima facie* case of discrimination which resulted from leave taken under the FMLA. Defendants are incorrect in their application of the standard on a motion for summary judgment. Plaintiff does not need to prove discrimination. Plaintiff is only required to raise a genuine issue of material fact as to whether discrimination was a factor in the defendants' decision to terminate him. Plaintiff has made a *prima facie* showing of retaliation. Specifically, plaintiff has produced evidence to support causation. First, there is close temporal proximity between plaintiff's medical leave and his termination.[26] Although timing alone does not give rise to an inference of retaliation,[27] the record as a whole shows that plaintiff was never disciplined prior to his return from medical leave. Within a month and a half after his return to full-time status, plaintiff was written up several times and ultimately terminated for his alleged failure to comply with safety standards. There is evidence that discrimination may have been a factor in the adverse employment action since other CETs were not disciplined for similar infractions.[28] In addition, the evidence suggests that Hill modified plaintiff's rotation schedule for taking time off under the

---

[25] *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir.1994) (discussing the *McDonnell Douglas* burden shifting under the Age Discrimination in Employment Act (ADEA)).

[26] *See Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir.1989).

[27] *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir.1991).

[28] Plaintiff was disciplined for installing a safety switch in the incorrect position on a treadmill even though another CET placed a switch in the same position during another installation.

FMLA. No safety violations were ever raised against plaintiff prior to his leave under the FMLA. Finally, there is evidence that defendants failed to provide the time, training and support to plaintiff after his return. There is a genuine issue of material fact as to whether discrimination was a factor in defendants' decision and therefore, their motion for summary judgment as to discrimination under the FMLA is denied.

## Age Discrimination

While defendants contend that age discrimination was not a factor in plaintiff's termination, plaintiff's evidence satisfies the criteria for a *prima facie* case. To establish a *prima facie* case, plaintiff must prove that: he was within the protected age group; he was qualified for the position; he was discharged or otherwise suffered an adverse employment action; and, in the case of demotion or discharge, he was replaced by a younger person or by a person outside the protected age group.[29]

Plaintiff is over 40, and therefore, a member of the protected group. He was qualified as a CET, had years of experience without discipline, and was subject to termination within months after his return from medical leave. In an age discrimination case, a claim cannot succeed unless the employee's age actually played a role in the disparate treatment and had a determinative influence on the outcome.[30]  Hill did not make specific comments about plaintiff's age; however, the evidence suggests that he was biased against older employees as shown by his alleged remarks. Further, Hill admitted that plaintiff was not the only employee who failed to properly update customer

---

[29] 19 *Del. C.* § 711 (2006).

[30] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

information and document repairs. Affidavits from Gregory Wilson and Ted Lehmann[31] support that other younger CETs were sloppy, handed in late and incomplete reports, and were never officially disciplined. No evidence has been presented that those younger CETs were disciplined for similar infractions. Moreover, a significant age gap exists between Hill and plaintiff, and plaintiff was replaced by a younger, less experienced technician. There is a genuine issue of material fact as to whether age discrimination was a factor in the defendants' decision to terminate plaintiff. Therefore, defendants' motion for summary judgment as to age discrimination under 19 *Del. C.* § 710 *et seq.* (2006) is denied.

## Handicap Discrimination

Plaintiff contends that he was discriminated against and ultimately terminated because Hill perceived him as handicapped. Under the Delaware Code, a person is regarded as handicapped when he: "a) [h]as a physical or mental impairment which substantially limits one or more major life activities; b) [h]as a record of such an impairment; or c) [i]s regarded as having such an impairment."[32] Defendants rely heavily on the argument that plaintiff is not *actually* handicapped because he is not substantially limited in a major life activity. They contend that his limitations would not render him disabled under the DHPEPA, and therefore, his DHPEPA claim must fail. The

---

[31] ARAMARK employees working for Hill in the Biomedical Engineering department when plaintiff was employed.

[32] 19 *Del. C.* § 722. "Is regarded as having an impairment" means: (i) Has a physical or mental impairment that does not substantially limit major life activities but that is treated as constituting such a limitation; (ii) has a physical or mental impairment that substantially limits major life activities because of the attitudes of others; or (iii) does not have a physical or mental impairment but is treated as having such an impairment. *Id.*

15

defendants contention is in error. Plaintiff may be *regarded as handicapped*, and as a result, be protected under 19 *Del. C*. § 722. The evidence supports that plaintiff has a speech impediment and physical deformity as a result of his surgery. In addition, he has difficulty walking, climbing stairs and it is painful for him stand for long periods of time. The evidence also supports that defendants regarded him as handicapped because they made reasonable accommodations to support him after his return from medical leave. Defendants reduced his work schedule and allowed him to do bench work, minimizing his need to move about and lift hospital equipment. Defendants were also aware that plaintiff required rehabilitation and periodic checkups. A reasonable jury might infer that defendants regarded plaintiff as handicapped, and that the discipline he received was a pretext for the decision to terminate his employment. As a result, there is a genuine issue of fact and therefore, defendants' motion for summary judgment under 19 *Del. C.* § 722 is denied.

**Hostile Work Environment**

To establish a *prima facie* hostile work environment claim, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment occurred because of his disability; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it.[33] A workplace environment becomes "hostile for purposes of Title VII and legal relief only when the offensive conduct permeate[s] [the workplace] with discriminatory

---

[33] *See Jones v. Billington*, 12 F. Supp. 2d 1, 11 (D.D.C. 1997).

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[34] The court must look at "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[35]

Plaintiff relies on two independent incidents to support his claim. First, he asserts that he was subject to a hostile work environment because of comments made behind his back by Money. Second, he was required to handle demand calls for Kent General Hospital without an assistant, and therefore, he suggests that Hill was unfair and insensitive to his disabilities.

Neither of plaintiff's assertions can sustain a hostile work environment claim. Other than plaintiff's own comments that he felt uncomfortable, there is no evidence that plaintiff was detrimentally affected by Money's alleged comments. In addition, the evidence suggests that plaintiff was unaware of the comments until after his termination.[36] There is no evidence that any alleged comments or actions by Hill or Money impacted plaintiff's work performance. With regard to his claim of being overworked, plaintiff never complained to Hill or other supervisors that his assignments

---

[34] *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) ((quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

[35] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

[36] When asked when he learned of Money's comments he said: "I – I believe it was after my termination, yes. Because I would have confronted her, I believe, if I had still been there, about it." D.I. 102, Ex. A at 180.

17

were too stressful or demanding, nor did he mention any abusive treatment by another employee. Plaintiff has not presented evidence which supports a hostile work environment claim. As a result, defendants' motion for summary judgment on plaintiff's hostile work environment claim is granted.

**Breach of the Covenant of Good Faith and Fair Dealing**

Employment in Delaware is considered at will except where the termination violates public policy.[37] The amended employment discrimination statute, 19 *Del. C.* § 712(b), provides the "sole remedy for claims alleging a violation of this subchapter to the exclusion of all other remedies."[38] Courts have followed this language[39] and therefore, plaintiff "cannot assert a common law claim for the breach of the implied covenant of good faith and fair dealing in discrimination cases where the Delaware state statute provides the exclusive remedy."[40]

The Delaware Supreme Court has held that an employee can maintain an action of breach of covenant of good faith against an employer when that employer falsified records which lead to the employee's dismissal.[41] While plaintiff argues that "this is exactly what . . . Hill did," he offers no evidence that he was disciplined for incidents that

---

[37] See *Lord v. Souder*, 748 A.2d 393 (Del. 2000).

[38] 19 *Del. C.* § 712(b) was enacted in 2005.

[39] See *E.E.O.C. v. Avecia, Inc.*, 151 Fed. Appx. 162 (3d Cir. 2005) (amended statute barred a state law claim for breach of the covenant of good faith and fair dealing); *see also Moon v. Del. River & Bay Auth.*, 2006 WL 462551, *4 (D. Del. Feb. 24, 2006).

[40] *Wilcoxon v. Red Clay Consolidated School Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006).

[41] See *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 444 (Del. 1996) ("[T]he harm derives from [the defendant's] creation of false grounds and manufacturing a record in order to establish a fictitious basis for termination.").

did not occur, nor does the evidence support that documents were falsified or modified to create fictitious grounds for termination. Plaintiff may not agree with the reasons for or outcome of the discipline stated by his employer, but that is not enough to maintain an actionable claim. Therefore, defendants' motion for summary judgment on breach of the covenant of good faith and fair dealing is granted.

### Slander

To establish a cause of action for defamation in Delaware, a plaintiff must show that the defendant made a "false and defamatory statement of fact concerning the plaintiff . . . in an unprivileged publication to a third party. A statement is not defamatory unless it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[42] "[T]he general rule is that oral defamation is not actionable without special damages."[43] However, where the defamatory oral statement "(1) malign[s] one in a trade, business or profession, (2) impute[s] a crime, (3) impl[ies] that one has a loathsome disease, or (4) impute[s] unchastity to a woman," a cause of action for slander can exist without proof of special damages.[44]

"Delaware law has established that some defamatory statements may fall within a privileged class for which no damages may be recovered."[45] Statements of opinion, as

_____

[42] *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del. 1998) (internal quotations omitted).

[43] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

[44] *Id.*

[45] *Wilcoxon v. Red Clay Consolidated School Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006) (citing *Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962)). "Such privilege extends to communications made between persons who have a common interest for the protection of which the allegedly defamatory

19

opposed to fact, are protected by the First Amendment and are not actionable as defamatory.[46]  Plaintiff alleges that a fellow employee, Money, made slanderous remarks about him to a fellow employee.  If, as plaintiff argues, Money communicated to another employee that plaintiff was incompetent, that communication is not slanderous.  While plaintiff argues that her comment maligned him in his trade or profession, there is no evidence that her alleged statements harmed his reputation in any way.  "Statements regarding one's competence are not ordinarily considered factual . . . and taken in their full and social contexts, are opinions."[47]  Plaintiff admits that he has no direct knowledge of Money's statements.  As a result, plaintiff's evidence is inadmissible hearsay, and cannot be considered at trial, or on a motion for summary judgment.

During his exit interview with Hill, plaintiff claims that Hill made derogatory remarks about his skills as a CET.  Allegedly, Hill told him that his skills were of a CET with five years experience instead of twenty-five years.  If genuine, the comment was made in confidence and was Hill's opinion regarding plaintiff's job performance.  Comments made in confidence, and directed to the individual receiving the particular criticism, cannot be defamatory.  Defamatory statements require publication to be considered harmful to an individual's reputation.  In addition, "Delaware law has established that some defamatory statements may fall within a privileged class for which no damages may be recovered."[48]  A qualified privilege can extend to statements made

statements were made." *Pierce,* 185 A.2d at 479.

[46] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

[47] *Park v. Georgia Gulf Corp.*, 1992 WL 714968, *12 (D. Del. Sept. 14, 1992).

[48] *Wilcoxon*, 437 F. Supp. 2d at 247.

20

"between persons sharing a common interest for the protection of which those statement were made."[49]  "The privilege reaches co-employees when the statements relate to the plaintiff's ability to perform his job."[50]  Because the allegedly defamatory statements relate to plaintiff's ability to perform his job, the statements fall within the privilege. Therefore, summary judgment is granted to defendants on plaintiff's defamation claim.

## CONCLUSION

For the reasons contained herein,

IT IS ORDERED and ADJUDGED that:

1. Defendants' motion for summary judgment (D.I. 100) on plaintiff's claim of discrimination under the Family Medical Leave Act, 29 U.S.C § 2617(a)(1) is DENIED.

2. Defendants' motion for summary judgment (D.I. 100) on plaintiff's claim of age discrimination under 19 *Del. C.* § 710 *et seq*. is DENIED.

3. Defendants' motion for summary judgment (D.I. 100) on plaintiff's claim of handicap discrimination under 19 *Del. C.* § 720 *et seq*. is DENIED.

4. Defendants' motion for summary judgment (D.I. 100) on plaintiff's claim of a breach of the covenant of good faith and fair dealing is GRANTED.

---

[49] *Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962); *see also Battista v Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982).

[50] *Park*,1992 WL 714968 at *11.

        5. Defendants' motion for summary judgment (D.I. 100) on plaintiff's claim

of a hostile work environment is GRANTED.

        6. Defendants' motion for summary judgment (D.I. 100) on plaintiff's claim

of slander is GRANTED.

January 14, 2008
Wilmington, Delaware

                             United States Magistrate Judge